RAWHIDE FARMS, INC., Harlan THORNTON, Jr., and Phil CAPUTO *v.* W. E. DARBY (R. A. LILE and Louis ROSEN, Co-executors of the Estate of William E. DARBY)

CA 79-145                                        589 S.W. 2d 210

Opinion delivered November 14, 1979
Released for publication November 26, 1979

*Jack D. Files,* for appellants.

*Eichenbaum, Scott, Miller, Crockett, Darr & Hawk, P.A.,* for appellees.

DAVID NEWBERN, Judge. This suit is for judgment on two promissory notes and foreclosure of a mortgage which secured the indebtedness evidenced by the notes. The chancellor found the appellants, who were the makers of the notes, were in default, and a foreclosure sale was ordered. The appellants appealed to the Arkansas Supreme Court, alleging the chancellor erred in failing to grant a continuance, in finding the appellants in default, and in allowing an inequitable acceleration pursuant to an acceleration clause in the

mortgage. The case was assigned to the Court of Appeals according to Rule 29(3). We reverse on the last of these points. Although not necessary to our decision, we consider the other points raised by the appellants worthy of discussion.

The appellants entered an agreement with Mr. Darby to purchase his farm. They gave him two promissory notes dated November 1, 1977; one in the amount of $532,500 and one for $167,500. The first payment on the larger note to become due October 31, 1978. Only interest was to be paid the first three years on that obligation. The smaller note, however, was to become due and payable in its entirety April 1, 1978.

The farm was conveyed to Rawhide Farms, Inc., which in turn mortgaged it back to Mr. Darby to secure payment of the two notes. The mortgage was signed by appellant Caputo as president of Rawhide Farms, Inc. The smaller note was signed by both appellants, individually. The larger note was signed by Caputo as president of Rawhide Farms, Inc., and by both Caputo and Thornton, individually. The chancellor found, and there was no serious dispute, the mortgage was given to secure both of the notes. The mortgage contained the following clause:

> If said indebtedness or any part thereof, principal or interest, shall not be promptly paid when due according to the tenor of said notes and of this mortgage . . . the whole indebtedness hereby secured, whether then due or not, shall immediately become due and payable for all purposes . . . at the option of the grantee . . . and this mortgage and security may be foreclosed by judicial proceedings . . .

The appellants paid a portion of the smaller note, but it is undisputed that it had not all been paid as of its due date, April 1, 1978. The chancellor found $67,648.42 outstanding on that note. Extensions were granted by Mr. Darby and by his agents, and the appellants made occasional small payments, one as late as July 20, 1978.

The foreclosure complaint was filed September 5, 1978. The appellants secured the services of an attorney, Guy Jones, Jr. The trial was set for January 3, 1979, after the case had been continued twice. On January 2, 1979, Mr. Jones informed the appellants it was necessary for him to be in Fort Smith at another hearing on January 3, and he could not appear with them in Perryville at the trial of this case. The appellants dismissed Mr. Jones as their counsel and hired Mr. Jack Files who appeared with them January 3. Mr. Files moved for a continuance to allow him to prepare for the hearing and because of surprise that Mr. Darby, who was then still living, was not at the trial. A continuance until January 5, 1979, was granted. On January 5, Mr. Files again moved for continuance, and after considerable discussion among counsel for both sides and the chancellor, the motion was denied.

I.

The first point raised for reversal is the chancellor's refusal to grant another continuance. The rule in Arkansas is that a motion to continue is addressed to the discretion of the trial judge, and his or her decision will not be overturned unless that discretion is manifestly abused. *McMorella* v. *Greer,* 211 Ark. 417, 200 S.W. 2d 974 (1947), and *Watts* v. *Cohn,* 40 Ark. 114 (1882). The appellants cite no Arkansas case dealing specifically with withdrawal or discharge of counsel. They cite a very distinguishable Texas decision, *Leija* v. *Concha,* 39 S.W. 2d 948 (Tex. Civ. App. 1931), in which counsel were forced to go to trial 30 minutes after being hired, and a Nevada case, *Benson* v. *Benson,* 66 Nev. 94, 204 P. 2d 316 (1949), in which the court said that the withdrawal on the eve of the trial of a party's attorney is not *ipso facto* a ground for continuance.

In this case, it is clear that one continuance was given the appellants after Mr. Files entered the case. Mr. Files argued he was, between January 2, and January 5, involved in another important case to which he had to devote his time, but the chancellor emphasized that Mr. Files had taken this case knowing the constraints on his time. The chancellor also made clear his conclusion that Mr. Files had presented

the case thoroughly and thus no prejudice had resulted to the appellants from the refusal to grant the continuance.

Although it was certainly not the fault of the appellants that they had to go to trial with a lawyer who was not very familiar with their case, the record shows the chancellor made every effort to see they had ample opportunity to present everything that could possibly have supported their defense. We cannot say the chancellor abused his discretion.

## II.

The second point raised by the appellants is that the larger note was not due at the time the suit was filed and thus that obligation should not have been considered accelerated. The appellants do not contend the note did not represent an indebtedness secured by the mortgage. For the proposition the larger note should not have been accelerated, the appellants cite *Vandergriff* v. *Vandergriff,* 211 Ark. 848, 202 S.W. 2d 967 (1947). That case is not in point as there the only default was failure to pay interest on a note, and the mortgage did not provide for acceleration for failure to pay interest. The appellant's only other citation in support of this point is *Massey* v. *Tyra,* 217 Ark. 970, 234 S.W. 2d 957 (1950), which we do not find at all helpful.

The notes were subject to acceleration as they must be read together with the mortgage. *McCormick* v. *Daggett,* 162 Ark. 16, 257 S.W. 2d 358 (1924), and *Markel* v. *Fallin,* 161 Ark. 504, 256 S.W. 841 (1923). The chancellor did not err in his determination the larger note was accelerated in accordance with the mortgage clause.

## III.

The third point of the appellants is that the finding the larger note was in default was against the preponderance of the evidence. Neither the appellants nor the appellees cite any authority with respect to this point, and thus we need not give consideration to it unless the argument presented by the appellant is otherwise convincing or it is apparent the point is well taken. *Hazen* v. *City of Booneville,* 260 Ark. 871, 545

S.W. 2d 614 (1977); *Dixon* v. *State,* 260 Ark. 857, 545 S.W. 2d 606 (1977). We need only say the acceleration clause contained in the note becomes irrelevant when read in conjunction with the mortgage, and the fact that the mortgage was signed by the appellants only as representatives of Rawhide Farms, Inc., is also unimportant. To find the appellants should not be held responsible for the terms of the mortgage would require us to say the indebtedness represented by the notes was not that which was secured by the mortgage. The appellants do not, and apparently could not, seriously make that argument.

## IV.

The appellants' fourth point for reversal is that Mr. Darby waived the right to accelerate by accepting late, partial payments. Because they cite *Seay* v. *Davis,* 246 Ark. 201, 438 S.W. 2d 479 (1969), we may assume an assertion the acceleration was not made in good faith.

The appellants' testimony indicated they felt they had an arrangement with Mr. Darby pursuant to which he would go as far as possible to help them buy the farm and be lenient in demanding, or not demanding, strict compliance with the terms of their agreement. Mr. Darby's actions in accepting late, partial payments on the overdue note gives credence to their argument. But Mr. Darby's deposition makes it clear he did not intend to be forgiving beyond a point.

*Seay* v. *Davis, supra,* was an interpretation of *Ark. Stat. Ann.,* § 85-1-208 (Add. 1961), which provides:

A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral ''at will'' or ''when he deems himself insecure'' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.

Although that section seems designed to apply only to "acceleration at will" clauses, it was applied in the *Seay Case* where the mortgage clause was described by the Arkansas Supreme Court as providing for acceleration *in the event of default* at the option of the holder. The Supreme Court held it was not error for the chancellor to have found bad faith where the holders invoked an acceleration clause because of a late payment. The mortgagors tendered payment 48 hours late, and the mortgagees sought foreclosure. The chancellor found the mortgagees were trying to take advantage of the mortgagors and obtain their down payment — not in good faith.

The important distinguishing factor here is that, unlike the mortgagors in the *Seay Case,* there is no record that the appellants in the case before us have tendered the amount due. Rather than bad faith, Mr. Darby apparently did try to work with the appellants by extending and taking partial payments on the overdue amount.

This brings us to the question whether the acceptance of these payments was a waiver of the right to accelerate. The law on this question has developed out of cases involving mortgages securing notes to be paid in installments. The most recent expression of the Arkansas Supreme Court on the matter is *Philmon, et ux.* v. *Mid-State Homes, Inc.,* 245 Ark. 680, 434 S.W. 2d 84 (1968), in which Chief Justice Harris cited with approval language to the effect that, although acceptance of a late payment precludes acceleration because of the lateness of that payment, it is not a waiver of the right to accelerate when default occurs on a subsequent installment. The principle involves there is not applicable here if we confine ourselves to looking at the note which was due, according to its own terms without reference to the mortgage, at the date of the acceleration, as no installments were involved, the note having become due in a lump sum April 18, 1978.

However, in urging us to apply the acceleration clause found in the mortgage, the appellees ask us to view all three instruments together and declare the entire indebtedness due because of the default on the smaller note. When we do that, it becomes clear that the smaller note was designed to be a

"down payment" or first installment. We hold that acceptance of the late, partial payments of the smaller note waived the right to foreclose until a subsequent default.

The first interest payment on the larger note became due October 31, 1978 and the second one became due October 31, 1979. This suit was filed on September 5, 1978, and we assume the appellants have, with some justification, not tendered these payments. Thus, the amount due at the time this suit was filed and adjudicated below has grown substantially.

Under these circumstances, where the appellants are at fault for not paying and the appellees for giving them some reason to believe acceleration would not occur, we hold the appellants should, upon remand, be given a reasonable time to make the overdue payments. If the entire amount owed by the appellants to Mr. Darby's estate, that is, the entire amount of the smaller note plus interest and the payments due on the larger note in accordance with its terms plus interest, is not paid at the date to be prescribed by the chancellor, the foreclosure may proceed. This was the approach taken by the Arkansas Supreme Court in *Crone* v. *Johnson,* 240 Ark. 1029, 403 S.W. 2d 738 (1966), albeit far lesser sums were involved, and we think it fair. We note that, although we have said the chancellor will give the appellants a reasonable time to make their payments current, in no event will the appellees be precluded from acceleration and foreclosure on October 31, 1980, if the amount due then, including the payment which falls due on that date, has not been paid.

## V.

The final point of the appellants has to do with computation of the judgment. The appellees respond with their own recalculation. In view of the result we reach, we deem it unnecessary to address the errors alleged in the manner of reaching the judgment, as the figures will undoubtedly be different in the event of a subsequent acceleration, judgment and foreclosure.

Reversed and remanded.