Dixie BOWEN *v.* Joe T. DANNA and Kathryn S. DANNA

82-91                                                637 S.W.2d 560

Supreme Court of Arkansas
Opinion delivered July 12, 1982
[Rehearing denied September 13, 1982.]

*A. Wayne Davis,* for appellant and cross-appellee.

*Lewis E. Epley, Jr.* of *Epley, Epley & Castleberry, Ltd.,* for appellees and cross-appellants.

ROBERT H. DUDLEY, Justice. This "foreclosure" suit is for acceleration of the maturity of a debt evidenced by a promissory note, for judgment on that promissory note, for judgment on the amount the mortgagees paid for an insurance policy to protect the security and for foreclosure of the mortgage securing the debt. The appellees, the Dannas, sold their home in Eureka Springs to James A. Bowen and appellant Dixie Bowen. As a part of the consideration the Bowens executed a promissory note and a mortgage which contained clauses providing for acceleration of maturity in the event of default. Prior to suit being filed, James A. Bowen, a separate defendant who was not married to Dixie Bowen, conveyed all his interest in the home to Dixie Bowen who alone appeals. The complaint alleges and the proof shows that the Bowens were consistently late in making the monthly installment payments but appellees accepted all payments until the month suit was filed. The Bowens did not pay the real estate taxes and, as a result, the property was sold to the State at a tax sale two weeks before the complaint was filed. The property was redeemed by appellant Dixie Bowen about two weeks after the filing of the complaint. In addition, after this suit was filed the company insuring the property gave notice to the parties that the policy was about to expire. Subsequently, the policy was allowed to expire.

Still later, the insurance company mailed reinstatement notices to the parties and appellees, the Dannas, paid the premium to have the policy reinstated. Eighteen days after the appellees had reinstated the policy, the appellant, who had insufficient funds in her bank account on that particular day, tendered a post-dated check as reimbursement to appellees. They refused to accept the post-dated check and, instead, amended their complaint to allege failure to maintain insurance on the premises as an additional basis for judgment and foreclosure.

The chancellor held that the failure to maintain insurance coverage was the default of a specific condition which authorized appellees to accelerate the maturity of the debt. Consequently, judgment was granted for all principal, unpaid interest to date of judgment, interest accruing from judgment until collected, payments for maintaining insurance coverage, attorney's fees and the property was ordered sold if the judgment was not paid within 90 days. The Court of Appeals, by a written opinion handed down on March 10, 1982, reversed the trial court. However, upon the filing of a petition for rehearing the Court of Appeals withdrew its opinion and certified the case to this court under Rule 29 (1) (c) as the case involves the interpretation of an act of the General Assembly. We affirm the trial court.

The appellant first argues that the chancellor erred in refusing to apply Ark. Stat. Ann. § 85-1-208 (Add. 1961), the "good faith requirement" for acceleration of the maturity date, which is as follows:

> Option to accelerate at will. — A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.

The question is whether the phrase "in the event of default," as contained in the note and mortgage in this case, should be considered in the same light as "at will" or "when he deems himself insecure" or words of similar import contained in the statute. If they are the same, a requirement of good faith attaches to any acceleration of maturity provision, whether exercisable "at will" of the creditor or only upon the occurrence of a specific event which is exclusively in control of the debtor. The chancellor found the requirement was not applicable because the promissory note did not provide that the holder could accelerate it at will or when he deems himself insecure but could only accelerate it upon default by the debtor in making the payments or in keeping the premises insured or in paying the taxes. We affirm.

In the original opinion of *Seay* v. *Davis*, 246 Ark. 201, 438 S.W.2d 479 (1969), we applied the good faith requirement to an acceleration clause in a note and mortgage even though there was default in a specific condition. "The note in this case falls within the intent of the code, its language being that in the event of default the note may be accelerated 'at the option of the holder.'" However, in a supplemental opinion, *Seay* v. *Davis*, 246 Ark. 627, 438 S.W.2d 479 (1969), we modified our opinion:

> In a petition for rehearing the appellants insist that the Code applies only when the contract permits the creditor to accelerate the maturity "at will," or words to that effect, whereas here there is also a condition in the contract that the debtors must be in default. The Commissioners' Comment to the cited section of the Code lends support to the appellant's argument, for it refers to an acceleration "at the whim and caprice of one party." . . .
>
> We think it proper to modify our original opinion by leaving that question open for future decision . . .

The Court of Appeals in the case of *Rawhide Farms, Inc.* v. *Darby*, 267 Ark. 776, 589 S.W.2d 210 (Ark. App. 1979), applied the statute in a case involving default in a specific condition, but in so holding, erroneously relied only upon

the original *Seay* v. *Davis* opinion as can be seen from the following quote at page 782:

> Although that section seems designed to apply only to "acceleration at will" clauses, it was applied in the *Seay Case* where the mortgage clause was described by the Arkansas Supreme Court as providing for acceleration *in the event of default* at the option of the holder.

The Court of Appeals recognizing the statutory interpretation issue has now certified this case to us.

The author of an article in 11 Boston Col. L. Rev. 531 notes that:

> ... Clauses which allow acceleration on the occasion of the insecurity of the creditor are expressly allowed under Section 1-208 of the Code. *Section 1-208 is not concerned with default type acceleration clauses.* The Code implicitly allows a default type acceleration clause since on default a secured party has the right to repossession of the collateral without judicial intervention; the creditor need only enumerate the occasions of default within the contract. [Emphasis supplied.]

The North Carolina Court of Appeals interpreted the good faith clause in like manner in *Matter of Sutton Investments, Inc.,* 266 S.E.2d 686 (N.C. App. 1980). There the buyer of a shopping center did not keep up with the payments so the seller declared the entire balance due under authority in the deed of trust permitting acceleration for failure to make payment when due. The buyer asserted that the seller's lack of good faith should preclude him from further action. The court noted:

> ... This contention is without merit. The statute relied upon is that portion of the Uniform Commercial Code which imposes a good faith requirement upon the exercise of a secured creditor's option to accelerate "at will" or "when he deems himself insecure." "These clauses are clearly distinguished from default-type clauses ... where the right to accelerate is conditioned

upon the occurrence of a condition which is within the control of the debtor" . . . the right of acceleration upon which Richardson's rights depend in the present case is conditioned upon the occurrence of an event within the complete control of the debtor, i.e., compliance with the terms and conditions contained in the Note and the Deed of Trust. Thus, assuming arguendo that G.S. 25-1-208 is applicable to real property transactions, it is inapplicable to the type of acceleration clause at issue in the present case.

The Missouri Court of Appeals also treated the question in *Don Anderson Enterprises, Inc.* v. *Entertainment Enterprises, Inc.*, 589 S.W.2d 70 (Mo. App. 1979). A monthly payment due on the purchase price of a sale of three taverns was not made and the seller accelerated the entire amount due pursuant to the sale agreement and the note. The court noted:

> Defendants' brief contains a second point which can be dismssed with a brief discussion. The contention is that the trial court erred in failing to give any accord to the "good faith" requirement of Section 400.1-208 RS Mo. 1978. The statute clearly reflects that it is concerned with situations where a creditor can deem itself "insecure" and accelerate the balance due "at will." Neither the sale agreement nor the note in the present case provided for such an option. Section 400.1-208 RS Mo. 1978 is inapplicable to this case.

Likewise, we hold that Ark. Stat. Ann. § 85-1-208 is inapplicable where the right to accelerate is conditioned upon the occurrence of an event, such as a lapse of required insurance coverage, which is in the complete control of the debtor. To this extent we modify *Rawhide Farms, Inc.* v. *Darby*, supra, and we affirm the chancellor's refusal to apply the statute. Consequently, we do not address appellant's arguments which are based solely upon the statute.

The appellant next contends that there should not be an acceleration of the maturity of the debt because there was substantial compliance with the requirement of insurance.

She offered a post-dated check 18 days after appellant had reinstated the policy and she obtained a separate policy 4 months and 12 days after reinstatement. At trial, she testified that she stood ready to make reimbursement. Thus, she contends, that by the date of the decree of foreclosure she had substantially complied with the required condition.

Clearly a court of equity can relieve a debtor from the hardship of acceleration of maturity. "Apart from the Code . . . a court of equity will protect a debtor against an inequitable acceleration of the maturity of the debt." *Seay v. Davis,* supra at 628. Equitable grounds which can prevent a default type of acceleration of maturity include accident, mistake, fraud or inequitable conduct of the creditor. *Johnson* v. *Guaranty Bank & Trust Co.,* 177 Ark. 770, 9 S.W.2d 3 (1928). However, the chancellor found no equitable grounds to prevent acceleration:

> . . . Dixie Bowen has failed to show . . . any fraud or other inequitable conduct . . . or sufficient accident or mistake on her part by which the court can relieve her from acceleration . . :
>
> * * *
>
> . . . the plaintiffs have shown . . . that they are entitled to acceleration . . . by reason of . . . Dixie Bowen's allowing the insurance coverage . . . to lapse without showing sufficient excuse on her part for permitting the insurance coverage to lapse. Had the plaintiffs not acted to obtain their own insurance coverage, the property would have been uninsured for a period of at least one month . . .

The chancellor's finding of facts will not be reversed unless clearly erroneous. ARCP Rule 52 (a); *Sharp County* v. *Northeast Arkansas Planning and Consulting Co.,* 269 Ark. 336, 602 S.W.2d 627 (1980). On the facts before us, we cannot state that the chancellor was clearly in error in finding that appellant failed to prove fraud or inequitable conduct on the part of the appellees or that she failed to prove accident or mistake on her part.

Appellant next contests (1) the payment of attorney's fees and (2) the amount of those fees. Appellant, for the first time on appeal, raises a technical argument involving a difference in the language of the note and the mortgage concerning default. The point should have been raised in the trial court if the validity of attorney's fees was to be put at issue. Even in trial de novo of an equity case, issues cannot be first raised on appeal. *Ragge* v. *Bryan,* 249 Ark. 164, 458 S.W.2d 403 (1970). Therefore we do not consider the argument that the awarding of attorney's fees was invalid.

The argument going to the amount of attorney's fees is on a different footing. Appellant in her answer pleaded "that an award equal to ten percent of the unpaid principal and interest would be unconscionable." After the trial court awarded ten percent of the unpaid principal and interest as attorney's fees, or $9,427.68, the appellant filed a motion asking the trial court to modify that amount. However, appellant withdrew the motion without presenting any evidence on the point. Thus, while the issue is before us, the appellant has made no showing of an abuse of discretion by the trial judge in setting the fee. The record does not disclose the time, labor or overhead involved, nor does it disclose the customary charge of the bar for similar services. We only know the amount of the unpaid principal and interest, the amount of the fee and that this particular action was a complex foreclosure involving a trial on the merits, with subsequent appeals to the Court of Appeals and now the Supreme Court. The amount of attorney's fees is within the sound discretion of the trial court and will not be modified unless there is a showing of an abuse of that discretion. *New Hampshire Ins. Co.* v. *Quilantan,* 269 Ark. 359, 601 S.W.2d 836 (1980). On the limited record before us we cannot state that there is an abuse of that discretion.

The appellees have cross-appealed and advance two additional reasons to affirm the judgment. They contend that the trial court erred in not finding a default for failure to pay taxes and in not finding a default for failure to timely make installment payments. However, there is no need to decide if there are two additional reasons for granting the same relief. "A cross appeal is required only when the

appellee seeks affirmative relief that he failed to obtain in the trial court, not when he won the case below and merely asks that the judgment be affirmed." *Moose* v. *Gregory*, 267 Ark. 86, 590 S.W.2d 662 (1979).

Affirmed on direct and cross-appeal.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority opinion in this case for several reasons. The first payment on the promissory note in this case was due on January 1, 1977. The note was in the original amount of $92,000 and was secured by a real estate mortgage on the property in question. It is not disputed that almost all of the payments, in the amount of $1,000 per month, were tendered and accepted routinely up to two weeks past their due date. The appellant had initially made a $36,000 payment when she purchased the property. When the May 1, 1979, payment was received by the appellees on May 12th it was refused and returned to the appellant. They also refused the payments for June, July and August. Apparently, all other monthly installments were paid into the registry of the court up to the date of the trial.

The promissory note in question provided, "if default be made in the payment of any installment when due, either principal or interest, then all remaining installments shall, at the option of the holder, become due and payable at once." The trial court allowed payment of attorney's fees on the balance of the note at 10%. However, there was no finding by the court that the appellant was in default on the note. Therefore, there should have been no attorney fees allowed because none are provided for in the mortgage. The mortgage required the appellant to pay the taxes and insurance on the property and provided that in default of payment on the note or upon failure to keep the insurance and taxes paid appellees could exercise an option to declare the balance due. The power reserved to the appellees in the mortgage was that they would have the right to take possession of the property without process of law and to sell it at public sale with or without notice to the appellant.

Since the court did not find that the appellant defaulted on either payment of the taxes or in the payment of principal and interest on the note, they will not be considered further in this dissent. I will only state that the property was redeemed before the end of 1979 which was less than three months after the due date.

Although the suit was filed on December 12, 1979, the appellees did not amend their complaint to allege a forfeiture on the insurance clause until June 26, 1980. Obviously, this was an afterthought and put in merely for the purpose of insuring their ability to reclaim this property upon which they had collected an initial payment of $36,000 and a considerable amount through monthly payments. The appellant had tendered to the appellees the payment of the insurance premium on March 10, 1980, which was more than three months prior to the filing of the suit. Appellant alleged she was ready, willing and able to pay this insurance premium at all times after tender of the payment on March 10, 1980. The decree of the chancellor was not filed until February 19, 1981. The record indicates that all payments had been made into the registry of the court up until this date. Also, the taxes had long since been paid and additional insurance had been enforced on the policy for about a year.

I agree with the majority that Ark. Stat. Ann. § 85-1-208 (Add. 1961) does not apply in this case because there was no acceleration "at will" clause in the note or mortgage. In other words, the security had never been in danger and there was no reasonable expectation on the part of the appellees that their security was in danger. In my opinion, the foreclosure was unconscionable, inequitable and undertaken solely for the purpose of attempting to cause the appellant to forfeit the considerable amount of money which she had paid on this property. The law abhors a forfeiture. We have held that courts of equity will protect a debtor against an inequitable acceleration of the maturity of the debt. *Crone* v. *Johnson*, 240 Ark. 1029, 403 S.W.2d 738 (1966); *Pulaski Federal Savings & Loan Ass'n.* v. *Woolsey*, 242 Ark. 612, 414 S.W.2d 633 (1967). Therefore, I would reverse the decision of the trial court.