## Nancy R. SCHULTE et al v. BENTON SAVINGS AND LOAN ASSOCIATION

83-74                                          651 S.W.2d 71

### Supreme Court of Arkansas
### Opinion delivered May 31, 1983

*Charles Phillip Boyd, Jr.* and *Eugene J. Mazzanti,* for appellants.

*Greg B. Brown,* for appellee.

FRANK HOLT, Justice. The issue in this case involves the enforceability of a "due on sale" clause in a mortgage where the mortgagee is a state chartered savings and loan association. The case is certified to us by the Court of Appeals pursuant to the Rules of the Supreme Court and Court of Appeals, Rule 29 (1) (c) and (4) (d).

In 1977, the appellant Ballard Construction Company executed a promissory note payable to the appellee and secured by a mortgage on commercial real property. Included in the mortgage contract was the following due on sale clause:

(j) Acceleration. The maturity of the principal indebtedness secured hereby may be accelerated in any of the following events: . . . .

(7) If the mortgagor or assignee sells or conveys (or contracts to sell or convey) all or any part of the mortgaged property without the written consent of the holder of said note.

In 1981, appellant Ballard Construction Company sold the mortgaged real estate to the appellant Schulte without the written consent of the appellee. The appellee elected to accelerate the maturity of the indebtedness. The appellant Schulte refused the appellee's demand that she pay the full indebtedness within 30 days. However, she tendered into the registry of the court the regular monthly installments, which appellee refused to accept, pursuant to the terms of the promissory note. The appellee declared the note to be in default and brought this action to collect the full balance of the note plus attorneys' fees. The trial court granted summary judgment in favor of the appellee, holding that the appellants were liable to the appellee for the $82,285.58 balance including $2,500 as being a reasonable attorneys' fee for which the note provided. Hence this appeal.

Appellants argue that the default is based upon a technical provision in the mortgage absent any showing that the security is impaired by the prohibited sale. They cite *Tucker* v. *Pulaski Federal Savings & Loan,* 252 Ark. 849, 481 S.W.2d 725 (1972). There, we held that a due on sale clause, such as the one presented here, could not be enforced unless the mortgagee reasonably believed its security was impaired by the sale. See also, *Seay* v. *Davis,* 246 Ark. 201, 438 S.W.2d 479 (1969), supplemental opinion on rehearing, 246 Ark. 627, 438 S.W.2d 479 (1969); and *Rawhide Farms* v. *Darby,* 267 Ark. 776, 589 S.W.2d 210 (Ark. App. 1979). However, in 1976 the Federal Home Loan Bank Board issued a regulation, 12 C.F.R. § 545.8-3 (f) (1982), permitting federally chartered savings and loans to enforce due on sale clauses without a showing that the security is impaired by the sale. In *Independence Federal Savings & Loan Association* v. *Davis,* 278 Ark. 387, 646 S.W.2d 336 (1983), we held that the FHLB regulation pre-empted state law on this issue, citing *Fidelity Federal Savings & Loan Ass'n* v. *De La Cuesta,* ___ U.S. ___, 102 S. Ct. 3014, 73 L.Ed.2d 664 (1982). Here the

appellee is a state chartered savings and loan association, not a federal savings and loan.

Our legislature enacted Act 242 in 1969 (Ark. Stat. Ann. § 67-1858 (4) and (5) [Repl. 1980]), the constitutionality of which is not questioned, which provides in pertinent part, with respect to the Board governing state chartered savings and loan associations:

ADDITIONAL POWERS OF ASSOCIATIONS. — Irrespective of any limitations contained in this Act [§§ 67-1801 — 67-1862] the Board may adopt rules and regulations authorizing or empowering any association chartered or operating under the provisions of said Act 227 of 1963, as amended, to:

. . . . .

(4) Adopt any business practice, procedure, method or system authorized for a Federal Association doing business in this State; and
(5) Make any loan or investment that a Federal Association doing business in this state is authorized to make; provided, in the absence of a general rule or regulation adopted by the Board the Supervisor may authorize an Association to make any loan or investment that a Federal Association doing business in this State is authorized to make.

The Emergency Clause provides:

It has been found and determined that Federal Associations doing business in this State have and will have an unfair competitive advantage over associations chartered by this State and that it is imperative to immediately remove such unfair competitive advantage. Therefore, an emergency is declared to exist, and this Act being necessary for the preservation of the public peace, health, safety and welfare, shall take effect and be in force from the date of its passage and approval . . . .

The Savings and Loan Association Board promulgated in 1972 regulations which provide in pertinent part:

## Rule III

Pursuant to Act 242 of the General Assembly of the State of Arkansas for 1969 [Ark. Stat. Ann. § 67-1801 et seq.] the Savings and Loan Association Board hereby adopts the following regulation:

(1) State Chartered Savings and Loan Associations after April 25, 1972, have the power to: . . .

(c) Adopt any business practice, procedure, method or system authorized for a Federal Association doing business in this State;

(d) Make any loan or investment that a Federal Association doing business in this State is authorized to make; provided, in the absence of a general rule or regulation adopted by the Board the Supervisor may authorize an Association to make any loan or investment that a Federal Association doing business in this State is authorized to make; and . . .

(3) Provided, that it was the clear intent of the General Assembly of the State of Arkansas in adopting Act 242 of 1969 that Federal Savings and Loan Associations doing business in this State should not have an unfair competitive advantage over State chartered associations and in order to implement this intent during interim periods of the quarterly meetings of the Arkansas Savings and Loan Association Board in the event Federal associations are granted powers after April 25, 1972, in addition to those existing or before that date, State chartered savings and loan associations shall have the same powers, unless within a period of ninety (90) days after the effective date of said Federal authorization, the Board at a public hearing shall disallow such powers.

In addition, Rule III — A (1) (a) gives to state chartered savings and loan associations:

(3) The power to offer any form of mortgage which now may be offered by federal savings and loan associations.

(4) The power to offer any form of mortgage which may hereafter be authorized for federal savings and loan associations under any rule, regulation or law which may hereafter be adopted, unless within a period of thirty (30) days after the effective date of such authorization, the Arkansas Savings and Loan Association Board at a public hearing shall disallow such powers.

The recited statute and rules clearly place state savings and loan associations on the same footing as federally chartered associations doing business in this State. Since we held in *Independence Federal Savings & Loan Association* v. *Davis, supra,* that federally chartered associations may enforce due on sale clauses in cases without the requirement of showing the security is impaired, it follows that state associations are duly empowered to do the same.

The appellants attempt to avoid the clear import of § 67-1858 and the Arkansas Savings and Loan Association Board's rules by the argument that, since *Rawhide Farms* v. *Darby, supra,* was decided after the FHLB adopted the 1976 regulations, *Rawhide* requires a holding here that the FHLB rule is inapplicable to state institutions. Suffice it to say that the statute and rules relied upon here were not presented to the Court of Appeals in *Rawhide,* so *Rawhide* cannot be a precedent as to their interpretation and applicability.

Since we affirm the trial court on the legal issue that the rule that governs federally chartered associations in Arkansas has been made applicable to state chartered associations by § 67-1858 and the Arkansas Savings and Loan Association Board, we must affirm the summary judgment. There is no genuine issue as to any material fact and the appellee is entitled to judgment as a matter of law. ARCP, Rule 56 (c).

The appellants also argue that the trial court erred in granting attorneys' fees to the appellee. Ark. Stat. Ann. § 68-910 (Repl. 1979) states that a provision in a promissory note for the payment of reasonable attorneys' fees, not to exceed ten per cent [10%] of the amount of the principal due,

plus accrued interest, for services actually rendered in accordance with its terms is enforceable as a contract of indemnity. Here, the relevant portion of the promissory note provides as follows:

> If at any time there shall be default in the payment of any monthly installment aforesaid, or any part thereof for a period of thirty days, then thereafter the interest on the entire unpaid principal indebtedness aforesaid shall, at the election of the payee herein without notice be at the rate of ten per cent per annum until paid (in lieu of the rate first above specified). And it is agreed that failure to pay any one of said installments when due or any part thereof that all installments shall immediately come due and payable.
>
> If, after default, in the discretion of the holder thereof, it becomes necessary to place this note and obligation in the hands of an attorney for collection or institution of legal proceedings, the undersigned will be obligated to pay an additional sum as an attorney's fee in an amount equal to ten per cent of the unpaid principal, plus accrued interest, as provided by law.

It is a familiar rule of construction that the terms of a contract will be construed against the party drafting it, and when there is a doubt as to the meaning of some provision, the doubt is resolved against the party who prepared the contract. *Leslie* v. *Bell*, 73 Ark. 338, 84 S.W. 491 (1904); and *Allen-West Commission Co.* v. *People's Bank*, 74 Ark. 41, 84 S.W. 1041 (1905). Here, the quoted portion of the note, *supra,* appears to define "default" in terms of failure to pay a monthly installment when due and attorneys' fees are provided for only in case of "default". The note does not provide for attorneys' fees in an action to collect on the note in event of acceleration based on a due on sale clause. The appellant continued making the monthly payments by depositing them into the registry of the court. In the circumstances, we hold she was not in "default" within the meaning of the attorneys' fee provision of the note. Accordingly, the chancellor erred by awarding attorneys' fees, and to that extent his decree is modified.

Affirmed as modified.